# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSHA WILLIAMS,<br>    **Plaintiff** | ) | |
| | ) | |
| | ) | |
| vs. | ) | **C.A.No. 08-135Erie** |
| | ) | |
| GREG HULL, et al., | ) | **Magistrate Judge Baxter** |
|     **Defendants.** | ) | |

## MEMORANDUM OPINION [1]

Chief Magistrate Judge Susan Paradise Baxter

### A.    Relevant Procedural History

On May 7, 2008, Plaintiff, a prisoner filed the instant action *pro se*.  Plaintiff has named Greg Hull, a Correctional Officer, and Deputy Warden Vincent Kinnane, both of the Erie County Prison, as Defendants to this action.[2]

In his short complaint, Plaintiff alleges that on April 30, 2008,

> First of all I put a request slip in to ask the counselor for a greviance [sic] which read could I have a greviance [sic] about the shit they fed us the day before the food they served us was not cooked all the way so I was called up to desk and he told me I could not recive [sic] a greviance [sic] and so I told I was going to go to

---

[1]  In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.  Documents ## 12, 21.

[2]  Plaintiff was transferred from the Erie County Prison to a state prison facility around July 8, 2008.  Document # 18-2, Affidavit of Deputy Warden James Senyo.

his supervisor so he decided to give me a misconduct ticket. And then I went to ask why was our mail being held and he would not commit so I asked for another grivance [sic] which was denid [sic]. So I had wife call the Warden Kinnane and she informed him as to what was going. And he stated to her he did not care.

Document, # 7, Complaint (in its entirety). Plaintiff claims that Defendants have violated his "due process of law prisoners rights to a grievance." Id. As relief, Plaintiff seeks monetary damages, as well as the "grievance procedure fixed." Id.

In a later filing, Plaintiff expands upon the allegations of his complaint and summarizes his claims as:

a.  Plaintiff contends that the Defendants violated his First Amendment right to free speech when they retaliated and confined Plaintiff in his cell for eight (8) hours after he requested a grievance to complain about the inedible food he was served.

b.  Plaintiff alleges that his Fourteenth Amendment due process rights were violated when the Defendants imposed upon him an eight (8) hour period of lock-down in his cell.

c.  Plaintiff contends that the Defendants violated his Eighth Amendment right to decent conditions in prison when they served him food that was inedible.

d.  Plaintiff contends that the Defendants violated his First Amendment right to access to the courts by rejecting legal correspondence that was mailed to him; and

e.  Plaintiff alleges that his First Amendment and Fourteenth Amendment rights were violated by the Erie County Prison's handling of mail.

Document # 28, Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, pages 3-4.

Defendants have filed a motion to dismiss, along with supporting documentation. Document # 26, incorporating the motion to dismiss filed at Document # 18. Within the text of the supporting brief, Defendants request that Plaintiff be directed to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), "because the allegations are so

vague and ambiguous that the Defendants cannot reasonably be required to frame a responsive pleading." Document # 19, page 16. Plaintiff has filed a brief in opposition to the pending dispositive motion. Document # 28.

## B.    Standards of Review

### 1.    *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

This Court liberally construes Plaintiff's filings to encompass five claims: 1) Plaintiff claims that he was retaliated against after he requested a grievance in order to complain about

the poor quality of the prison food; 2) Plaintiff claims the punishment of eight hours of cell confinement violated his due process rights; 3) Plaintiff claims the denial of a grievance process violates his constitutional rights; 4) Plaintiff claims that the poor quality of the food violates his Eighth Amendment rights; and 5) Plaintiff claims that his mail was mishandled thereby restricting his access to the courts in violation of his First and Fourteenth Amendment rights. Because many of Plaintiff's allegations have been clarified in his Opposition Brief, Defendants have not addressed all of Plaintiff's claims in the pending motion to dismiss.

### 2.     Motion to dismiss pursuant to 12(b)(6)

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, ___ 127 S.Ct. 2197, 2200 (2007); Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976).   The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim.  Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974).   A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)).  See also Ashcroft v. Iqbal, ___ U.S. ___, ___, ___ S.Ct. ___, ___ 2009 WL 1361536 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).   The court must accept as true all allegations of the

complaint and all reasonable factual inferences must be viewed in the light most favorable to

plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).

The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by

the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb

Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d

902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual

allegations.  Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286 (1986).

"Factual allegations must be enough to raise a right to relief above the speculative level."

Twombly, 550 U.S. at 556.  Although the United States Supreme Court does "not require

heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to

relief that is plausible on its face."  Id. at 570.

     In other words, at the motion to dismiss stage, a plaintiff is "required to make a

'showing' rather than a blanket assertion of an entitlement to relief."  Smith v. Sullivan, 2008

WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515

F.3d 224, 231 (3d Cir. 2008).  "This does not impose a probability requirement at the pleading

stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery

will reveal evidence of the necessary element."  Phillips, 515 F.3d at 232, quoting Twombly,

550 U.S. at 556 n.3.


### 3.    Motion for summary judgment

     Defendants have submitted evidence in support of their motion to dismiss.  Therefore,

this Court will convert the motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6) to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir.1998). ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v. Smith, 2003 WL 1090708, *1 (3d Cir. 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential

6

fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

**C.     The Prison Litigation Reform Act**

Defendants argue that this case should be dismissed because Plaintiff has failed to

exhaust his administrative remedies in accordance with the requirements of the PLRA.

### 1.      The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

<u>Id</u> (emphasis added).[3]

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. <u>Porter v. Nussle</u>, 534 U.S. 516 (2002). <u>See</u> <u>also</u> <u>Concepcion v. Morton</u>, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. <u>Grimsley v. Rodriquez</u>, 113 F.3d 1246 (Table), 1997 WL

---

[3]  It is not a plaintiff's burden to affirmatively plead exhaustion. <u>Jones v. Bock</u>, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); <u>Ray v. Kertes</u>, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506 (2002)). Instead, the failure to exhaust must be asserted and proven by the defendants. <u>Ray</u>, 285 F.3d at 295. In categorizing exhaustion as an affirmative defense, the Third Circuit outlined the underlying policy considerations: "... it appears that it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion. Prison officials are likely to have [...] superior access to prison administrative records in comparison to prisoners. Prison officials and their attorneys can also readily provide the court with clear, typed explanations, including photocopies of relevant administrative regulations. *Pro se* prisoners will often lack even such rudimentary resources." <u>Id.</u>

2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[4]  The exhaustion requirement is not a

technicality, rather it is federal law which federal district courts are required to follow.  Nyhuis

v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought,"

Congress has "clearly required exhaustion").  The Third Circuit has made clear that there is no

"futility" exception to the administrative exhaustion requirement.  Banks v. Roberts, 2007 WL

3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this

Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory

exhaustion requirement.'").[5]

        The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the

administrative review process in accordance with the applicable procedural rules of that

grievance system.  Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands

compliance with an agency's deadlines and other critical procedural rules ...").  Importantly, the

exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally

defective ... appeal."  Id. at 83; see also Spruill v. Gillis,  372 F.3d 218, 228-29 (3d Cir. 2004)

(utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier

discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated

objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to

---

        [4] Importantly, a plaintiff's failure to exhaust his administrative remedies does not
deprive the district court of subject matter jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d
Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is not a jurisdictional
requirement, such that failure to comply with the section would deprive federal courts of subject
matter jurisdiction.")

        [5] See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in Booth, a
prisoner must now exhaust administrative remedies even where the relief sought-monetary
damages-cannot be granted by the administrative process.").

prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 2. The Administrative Process Available to Erie County Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218.

The Erie County Prison has established a multi-tier system whereby an inmate may seek formal review of aspects of his imprisonment. The written policy indicates that, initially inmates should attempt to verbally resolve grievances, incidents, problems, or complaints through their housing unit staff. Document # 18-2, page 13. If the issue is not resolved informally, the inmate may file a written grievance with the inmate's counselor within fifteen days of the event at issue. Id. In the event the inmate is unhappy with the initial result of the grievance, he may appeal to the Warden, who shall make a determination on the appeal within ten working days. Id.

### 3. Analysis

Defendants argue that this case should be dismissed because Plaintiff has failed to exhaust his administrative remedies related to any of the events outlined in the complaint. This

Court will address the exhaustion of each of Plaintiff's claims in turn.


### (a)     the quality of food

The record before this Court demonstrates that on April 29, 2008, Plaintiff submitted a request slip seeking a grievance form in order to complain about the quality of the prison food. The request slip read: "I need a grievance for that shit they feed us at dinner." Document # 18-2, page 2 (Affidavit of Deputy Warden James Senyo, ¶ 5) and page 6 (Request Slip). The request form was returned to Plaintiff by Counselor Hull indicating "do not swear on request slips." Id. The record further reflects that Plaintiff was not given a grievance form.

Plaintiff avers that following the submission of the request slip, Defendant Correctional Officer Hull called Plaintiff to the desk to discuss the request slip with him. Document # 28. Plaintiff alleges that he again asked for a grievance form, but Defendant Hull refused to provide him with one. Id. Following Hull's refusal, Plaintiff requested that he be allowed to speak with Hull's supervisor and Hull responded by giving Plaintiff a minor misconduct for insolence and abuse of a request slip, resulting in the 8-hour cell lockdown. Id.

A prisoner need not exhaust every administrative remedy, only those administrative remedies which are available to him. Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). In this context, "available" means "capable of use" (Brown v. Croak, 312 F.3d 109,113 (3d Cir. 2002)) and the availability of the administrative remedy process is a question of law (Ray, 285 F.3d at 291). Interference with an inmate's attempts at exhaustion impact the availability of the administrative remedy process. Brown, 312 F.3d at 111; Camp, 219 F.3d at 281. "A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it." Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)

(administrative remedies process not available to inmate where prison staff refused to provide him with necessary forms).[6]

The record is clear that Plaintiff did not receive the requested greviance form in order to complain about the quality of the food. The denial of a grievance form in this regard makes the administrative remedy process unavailable to Plaintiff on this issue and therefore, his failure to exhaust will be excused.

**(b)    denial of grievance forms[7]**

The record before this Court indicates that around May 6, 2008, Plaintiff filed a grievance regarding the April 2008 denial of grievance forms. Document # 18-2, page 2 (Affidavit of Senyo, ¶¶ 6-7) and pages 8-11 (Grievance and response). The grievance was

------------------------------

[6] See also Berry v. Klem, 283 Fed. Appx. 1, 5 (3d Cir. March 20, 2009) ([Plaintiff] contended that the severity of his injuries prevented him from timely filing his initial grievance. [... and] also argued that the administrative grievance process was not available to him because he feared serious harm for filing a grievance. While that claim may not ultimately prevail, his allegations put in question the availability of the remedy."); McKinney v. Guthrie, 2009 WL 274159, at * 1 (3d Cir. Feb. 20, 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process."); Brown, 312 F.3d at 113 ("Assuming security officials told Brown to wait for the termination of the investigation before commencing a formal claim, and assuming the defendants never informed Brown that the investigation was completed, the formal grievance proceeding required by DC-ADM 804 was never "available" to Brown within the meaning of 42 U.S.C. § 1997e.").

[7] It is well settled that "an inmate has no constitutional right to a grievance procedure." Johnson v. Rush, Slip Copy, 2009 WL 237187, at * 2 (3d Cir. Feb. 3, 2009) quoting Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991). See also Hewitt v. Helms, 459 U.S. 460, 467 (1983); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996); Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994). Plaintiff's allegation that the denial of grievance forms violates his constitutional rights fails to state a claim under the law.

denied by Deputy Warden Kinnane.  Id.  Thereafter, Plaintiff did not appeal Kinnane's decision.

Document # 18-2, Affidavit, at ¶ 13.

Accordingly, Plaintiff did not exhaust his administrative remedies in regards to the April

2008 denial of grievance forms and summary judgment must be awarded to Defendants on this

claim.

 

      **(c)**       **retaliation**

Defendants have not provided any evidence as to whether Plaintiff exhausted his

administrative remedies as to the retaliation claim.

 

      **(d)**       **interference with mail/access to courts[8]**

The record reflects that on May 20, 2008,  Plaintiff filed a Grievance (#39) complaining

that his legal mail (consisting of several pages of Internet printouts) was returned to the sender.

Following the May 20th grievance, Plaintiff's wife called Deputy Warden Senyo regarding

Plaintiff's mail.  Deputy Warden Senyo reviewed the documents at issue and determined that

they should have been forwarded to Plaintiff and Senyo turned them over to Plaintiff on May

_____

[8]  Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts.  Bounds v. Smith, 430 U.S. 817 (1977).  In order to state a claim for a denial of the right of access to the courts, a plaintiff must demonstrate actual injury.  Lewis v. Casey, 518 U.S. 343 (1996). As the Third Circuit has made clear: "Prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002).  In this case, Plaintiff has not alleged such in his complaint.   Although Plaintiff argues in his Opposition Brief that "these papers were needed to assist him in filing a petition to the courts," such a conclusory and self-serving statement is insufficient to state an access to courts claim.

22, 2008.  Senyo further contacted Captain Kalivoda and directed him to allow such future mailings to be delivered to Plaintiff because "they arguably could be related to some legal issues [Plaintiff] wanted to pursue."  Document # 18-2, ¶ 15.

Thereafter, Deputy Warden Kinnane submitted a response to Grievance #39 indicating that the grievance had been resolved and that the mail at issue had been delivered to Plaintiff. Id.  Plaintiff took no further action.  Id.

Because there is no futility exception to the PLRA's exhaustion requirement, Plaintiff is required to exhaust through all levels of the administrative process as to this issue even though he arguably won at the initial level of review.  See Williamson v. Wexford Health Sources, 131 Fed. Appx. 888, 890 (3d Cir. 2005) ("Williamson argues, essentially, that further administrative exhaustion would have been futile because he had 'received all the medical treatment he requested.' [...] Williamson was required to present his claim at all levels of the administrative appeals process before filing suit.").

Accordingly, Plaintiff has failed to exhaust and summary judgment must be awarded to Defendants on this claim.


**(e)    misconduct/lockdown**

Defendants have not presented any evidence as to the exhaustion of the administrative remedy process as to the misconduct for insolence and the resulting punishment of eight hours of lockdown.

Defendants will be permitted to renew this defense in a future dispositive motion.

**D.      The Eighth Amendment Claim**

Plaintiff alleges that the poor quality of the food at the Erie County Prison violated his Eighth Amendment rights.

Under the Eighth Amendment, prisoners are protected from cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825 (1994). But, "not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights." Booth v. King, 228 Fed.Appx. 167, 171 (3d Cir. 2007). Cruel and unusual punishment will only be found "where, viewing the totality of the conditions in the prison, the inmate's conditions of confinement, alone or in combination, deprive him of the minimal civilized measure of life's necessities." Id. quoting Tillery v. Owens, 907 F.2d 418, 426-27 (3d Cir.1990).

In the non-medical context, the Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984). To make out an Eighth Amendment claim based on prison conditions, the plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer, 511 U.S. at 834. An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000).

As to the first requirement, "prison conditions violate the Eighth Amendment if they result in the 'unnecessary and wanton infliction of pain,' are 'grossly disproportionate to the severity of the crime warranting imprisonment,' or result in an 'unquestioned and serious

deprivation of basic human needs.'" Robinson v. Carr, 99 F.3d 1150 (Table)(10th Cir.1991) quoting Rhodes, 452 U.S. at 346-47. As to the second requirement, deliberate indifference is a difficult standard to meet: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

Plaintiff's allegations regarding the quality of the food at the Erie County Prison are not sufficient to state an Eighth Amendment claim. Laufgas v. Speziale, 263 Fed.Appx. 192, 198 (3d Cir. 2008) ("the prison's failure to provide two hot meals a day constituted a violation of his constitutional rights. As the District Court stated, while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, there is no constitutional right to hot meals."); Ali v. Suchocki, 254 Fed.Appx. 143 (3d Cir. 2007); Awala v. New Jersey Dept. of Corrections, 227 Fed.Appx. 133 (3d Cir. 2007). These conditions alleged fall short of demonstrating cruel and unusual punishment because there is no evidence that they "inflict unnecessary or wanton pain" or are "grossly disproportionate to the severity of crimes warranting imprisonment," under the objective standard. Rhodes, 452 U.S. at 348-50. Thus, the facts alleged here do not constitute cruel and unusual punishment because they do not adequately allege that basic human needs were left unsatisfied. Tillman, 221 F.3d at 419 (prisoner was not subject to cruel and unusual punishment because he was never denied room, food, or other necessities).

Accordingly, the motion to dismiss should be granted as to this Eighth Amendment claim.

**E.     The Due Process Claim**

The due process clause, guaranteed through the Fourteenth Amendment of the United States Constitution, provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. V; XIV.  The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government.  The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; while the "substantive" aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression.[9]  Daniels v. Williams, 474 U.S. 327, 329-33 (1986).

In his Opposition Brief, Plaintiff clarifies that he is pursuing a procedural due process claim.  Document #28, page 8 ("Plaintiff contends that the Defendants violated his due process

--------------------------------------------

[9]  The constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them.  Foucha v. Louisiana, 504 U.S. 71, 80 (1990).  See also Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.").  The Supreme Court has declined to set forth a precise rule that defines the exact scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause.  County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (clarifying that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience.").

In his complaint, Plaintiff alleges that the issuing of the misconduct violates his due process rights.  In his Opposition Brief, Plaintiff also avers that his due process rights were violated when Defendants imposed eight hours of disciplinary segregation on him (presumably resulting from the misconduct).  Neither of these allegations rise to the level of egregiousness necessary to support a substantive due process claim.  Accordingly, to the extent that Plaintiff's allegations can be liberally construed as attempting to allege a claim of substantive due process, the allegation fails to state a claim upon which relief may be granted.

right to some kind of hearing prior to him receiving the minor misconduct ticket and eight hour confinement in his cell."). The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. Daniels, 474 U.S. at 339. If a person does not have a constitutionally-protected interest, he is not entitled to the procedural protections afforded by the Due Process Clause.[10]

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt v. Helms, 459 U.S. 460, 466 (1983). For inmates, "constitutionally mandated procedures are only necessary where protected interests are involved, and, under Sandin [v. Conner, 515 U.S. 472, 484 (1995)], protected liberty interests are limited to freedom from restraint that impose 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Armstrong v. Brooks, 283 Fed. Appx. 906, 909 (3d Cir. 2008). "The determination of what is 'atypical and significant' is based upon the range of conditions an inmate would reasonably expect to encounter." Williams v. Sebek, 299 Fed. Appx. 104, 107 (3d Cir. 2008).

――――――――――――――――――――

[10] If a liberty interest is found, the next step in the due process inquiry is to determine what process is due. "Due process ... is not a technical conception with a fixed content unrelated to time, place and circumstances." Gilbert v. Homar, 520 U.S. 924, 930 (1997). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). At a minimum, due process requires notice and the opportunity to be heard. Paul v. Davis, 424 U.S. 693, 724 (1976) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").

18

However, procedural due process claims by pretrial detainees are judged by a very different standard because pre-trial detainees are afforded greater constitutional protections. The Due Process Clause "prohibits punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 531 (1979). See also Hubbard v. Taylor ("Hubbard II"), 538 F.3d 229 (3d Cir. 2008).

At this point in the proceedings, it is unclear to this Court whether Plaintiff was a pretrial detainee or an inmate on the date at issue here. See Document # 28, page 9; Document # 18-2, Affidavit of Senyo, ¶ 4. Accordingly, this Court cannot determine whether Plaintiff has stated a procedural due process claim. Plaintiff will be allowed to file an amended complaint as to this claim.


**F.      The Retaliation Claim**

In his Opposition Brief, Plaintiff raises a retaliation claim. More specifically, Plaintiff avers that Defendants retaliated against him by issuing the misconduct after he requested a grievance to complain about the inedible food.

The retaliation for the exercise of one's underlying constitutional rights is a matter which requires a legal analysis separate and distinct from the analysis of whether the underlying constitutional right has been violated. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d at 111-12. "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a

constitutional right." <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003) <u>quoting</u> <u>Allah v.</u>

<u>Seiverling</u>, 229 F.3d 220, 224-25 (3d Cir. 2000).[11]

Because Plaintiff has only raised the retaliation claim within the body of his Opposition

Brief, Defendants have not yet addressed this claim. Plaintiff will be directed to file an

amended complaint to more fully allege his retaliation claim.

### G.  Qualified Immunity

Alternatively, Defendants argue that this case should be dismissed against them because

they are entitled to qualified immunity.

The doctrine of qualified immunity insulates government officials from liability for

damages insofar as their conduct does not violate clearly established rights. <u>Harlow v.</u>

<u>Fitzgerald</u>, 457 U.S. 800, 818 (1982). An officer performing his discretionary functions is

"shielded from liability for civil damages insofar as [his] conduct does not violate clearly

---

[11] In order to state a *prima facie* case of retaliation, a prisoner must demonstrate: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered "adverse action" at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him. <u>Carter v. McGrady</u>, 292 F.3d 152, 157-58 (3d Cir. 2002) <u>quoting</u> <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally protected activities. <u>Carter</u>, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." <u>Rauser</u>, 241 F.3d at 334.

established statutory or constitutional rights of which a reasonable person would have known." Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 530 U.S. 730, 739 (2002). This Court notes that the two-step inquiry set forth in Saucier v. Katz, 533 U.S.194 (2001) has recently been relaxed by the Supreme Court in Pearson v. Callahan, 555 U.S. ___, 129 S.Ct. 808 (Jan. 21, 2009). See also Bumgarner v. Hart, 2009 WL 567227 (3d Cir. March 6, 2009).

The Supreme Court has repeatedly emphasized the importance of resolving the immunity questions at the earliest possible stages of a case. Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987); Harlow, 457 U.S. at 818. However, "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." Curley, 298 F.3d at 277. Because this Court is allowing Plaintiff to amend his complaint as to his procedural due process and retaliation claims, it is premature to examine Defendants' qualified immunity defense at this time. Defendants will be permitted to renew this defense in a future dispositive motion.

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROSHA WILLIAMS,              )
       Plaintiff            )
                           )

vs.                        )         C.A.No. 08-135Erie
                           )

GREG HULL, et al.,         )         Magistrate Judge Baxter
       Defendants.         )

## O R D E R

AND NOW, this 4th day of June, 2009;

IT IS HEREBY ORDERED that the motion to dismiss filed by Defendants [Document # 26] be GRANTED. The Eighth Amendment claim is dismissed for failure to state a claim. The alleged denial of grievance forms and the alleged interference with mail/access to courts claims are dismissed for failure to exhaust in accordance with the PLRA.

IT IS FURTHER ORDERED that the motion for more definite statement [contained within Document # 19] is GRANTED in part. IT IS FURTHER ORDERED that Plaintiff may file an amended complaint before June 19, 2009 to more fully allege the procedural due process and retaliation claims mentioned in his Opposition Brief. Plaintiff's failure to file the amended complaint before June 19, 2009, may result in the dismissal of this action due to failure to

prosecute.

IT IS FURTHER ORDERED that Defendants may file either a dispositive motion or an answer in response to the amended complaint before July 17, 2009.


S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge